## IN THE UNITED STATES DISTRICT COURT FOR

## THE  WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEUBERT & ASSOCIATES, INC. and TEAM TEN LLC, d/b/a AMERICAN EAGLE PAPERMILLS, | : | Case No.: 2:20-cv-01880-MJH |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | **PLAINTIFFS' FIRST AMENDED** |
| v. | : | **COMPLAINT IN CIVIL ACTION** |
| | : | |
| THE AMBASSADOR GROUP LLC, | : | |
| d/b/a AMBASSADOR CAPTIVE SOLUTIONS | : | |
| And BRANDON WHITE | : | |
| | : | |
| Defendants. | | |

Filed on behalf of:
Seubert & Associates, Inc., Plaintiff


Counsel of Record for this Part:

W. David Slomski, Esquire
PA I.D. # 32255
Law Offices of W. David Slomski, Esq.
210 Federal Street, Suite 200
Pittsburgh, PA 15212
412-391-8443
dslomski@slomskilawpa.com

**IN THE UNITED STATES DISTRICT COURT FOR**

**THE  WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEUBERT & ASSOCIATES, INC. and<br>TEAM TEN LLC, d/b/a AMERICAN<br>EAGLE PAPERMILLS, | : | Case No.: 2:20-cv-01880-MJH |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE AMBASSADOR GROUP LLC, | : | |
| d/b/a AMBASSADOR CAPTIVE | : | |
| SOLUTIONS | : | |
| And BRANDON WHITE | : | |
| | : | |
| Defendants. | | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT IN CIVIL ACTION**

<u>PARTIES</u>

AND NOW come the Plaintiffs, by and through their undersigned counsel, and file the following Complaint in Civil Action, stating as follows:

1.     Plaintiff, Seubert & Associates, Inc. ("Seubert"), is a Pennsylvania Corporation engaged in business as an insurance brokerage, located at 225 North Shore Drive, Suite 300, Pittsburgh, PA 15212.

2.     Plaintiff, American Eagle Papermills, Inc. ("AE PAPER") is a fictitious name for Team Ten, LLC, a Pennsylvania Limited Liability Company operating a paper-making business at 1600 Pennsylvania Avenue, Tyrone, PA 16648.

3.     Defendant, The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions ("Ambassador"), is a Kentucky Limited Liability Company with a principal place of business at 9700 Park Plaza Avenue, Lexington, KY 40241.

4.      Defendant, Brandon White, ("White") is an individual residing at 5008 Hickory Hill Drive, Lagrange, KY 44031.

5.      Both Ambassador and White are subject to jurisdiction in Allegheny County, Pennsylvania as both Defendants do business with Plaintiff Seubert in Allegheny County.

6.      On or about May 15, 2019, Philip Devorris, a principal and officer of AE PAPER, invited Brian Long and Daniel Seltzer, representatives of Seubert, to discuss AE PAPER's need for property insurance with Clark Adelman, AE PAPER's Vice President, at AE PAPER's plant in Tyrone, PA, and Kathy Wagner, CFO of Blair Companies, the majority shareholder in AE Paper.

7.      Defendant Brandon White was known to Seubert as someone who had represented himself as an expert in the formation and management of offshore insurance captives.  Seubert has conducted this type of business with Defendants for several years.

8.      Because of the extreme scarcity of insurers willing to provide the coverage for paper recycling plants in the USA, and which is needed by AE PAPER, Seubert introduced Defendant White to Devorris of AE PAPER to discuss the feasibility of insuring AE PAPER through the creation and funding of an offshore insurance captive for AE PAPER.

9.      During a conference call on September 10, 2019, White and Ambassador represented to Seubert and to AE PAPER that Ambassador could provide comprehensive services to AE PAPER in forming an offshore insurance captive, designing the insurance program, implementing the program and placing the requisite insurance and reinsurance to AE PAPER's Captive.  This relates to an area of insurance known as "captive reinsurance". Captive reinsurance programs are complex multi-party arrangements that require

2

specialized expertise and significant underwriting experience with access to needed carrier capacity.

10.     White convinced AE PAPER to authorize his company, Ambassador, to create an offshore insurance captive for AE PAPER that would provide the coverage needed by AE PAPER to replace its coverage with Factory Mutual.

11.     On September 6, 2019, AE PAPER received and signed a Captive Services Agreement prepared by Ambassador.  A true and correct copy of the Agreement is attached hereto and marked **Exhibit A**.   The Captive Services Agreement identified the comprehensive services Ambassador was to provide to AE PAPER.

12.     On or about September 10, 2019, Ambassador sent an Invoice to AE PAPER for $50,000.00, for Ambassador to form AE's segregated portfolio, or "cell." AE PAPER paid the $50,000.00.  A true and correct copy of the Invoice is attached and marked **Exhibit B**.

13.     On October 16, 2019, White and Ambassador advised Seubert and AE PAPER that negotiations with reinsurers were underway.

14.     On October 18, 2019, White and Ambassador presented Seubert and AE PAPER with three (3) captive approaches and their plan for establishing a captive for AE PAPER.  A true and correct copy of the document is attached and marked **Exhibit C**.  White advised Seubert and AE PAPER that the formation of AE PAPER's captive was underway.

15.     On November 7, 2019, White advised Seubert that he was "pushing CIMA for approval daily" and "expects approval today or tomorrow," (of AE PAPER's Insurance Captive) and advised that he had secured quotes to insure AE PAPER.   (CIMA is the Cayman Island Monetary Authority.)

16.     Seubert requested copies of the "insuring agreements, terms, exclusions, etc.," and was told by Ambassador on November 8, 2019 that they would be sent "this

week".

17.     In late-November, AE Paper received a Letter of Interest related to a potential sale of the business.  AE Paper informed Ambassador they would pause the insurance discussion while this was explored.

18.     In early January, Seubert called Ambassador, to say it did not appear a deal was forthcoming and to proceed with the insurance.  Ambassador said the price and deductible had increased modestly, but they would send over the updated terms.

19.     Despite having represented to Seubert and AE PAPER that Ambassador had obtained pricing and terms to form a captive for AE PAPER, it was not until February 4, 2020 that White advised Seubert that Ambassador had "received revised terms from London."

20.     On February 20, 2020, Seubert finally received written terms offering coverage for AE PAPER from Ambassador*.*  Seubert discussed the terms proposed by Ambassador with Ambassador, then incorporated them into a diagram that Seubert sent to Ambassador to confirm.  Defendants  replied in writing that the diagram  "perfectly" illustrates the negotiated terms.  A true and correct copy of the written terms is attached hereto and marked **Exhibit D**.

21.     A summary of the proposed terms sent by Ambassador included that AE PAPER would pay the sum of $948,690.00 for $13 million dollars  of insurance coverage with a 25% share of the first $5,000,000.00 loss, $425,690 of which was allocated specifically to various fees, reinsurance premium and loss fund plus $523,000.00, that would be returned to the AE PAPER Insurance Company.

22.     In a conference call held on February 24, 2020, AE PAPER authorized Ambassador to bind coverage for AE PAPER effective as of March 1, 2020.

23.     On March 2, 2020, Seubert requested the policy forms and proof of insurance coverage for AE PAPER.   White responded that Seubert would receive evidence of coverage the next day.

24.     Ambassador confirmed that it had bound $13 million dollars of insurance for AE PAPER's captive, in a March 3, 2020 email to Seubert which is attached and marked **Exhibit E**.

25.     On March 5, 2020, Ambassador sent Seubert a Binder of Coverage from Faraday Insurance which Ambassador fraudulently evidenced the $13 million dollars in insurance coverage that Ambassador had bound for AE PAPER. A true and correct copy of the Binder is attached and marked **Exhibit F**.

26.     On March 12, 2020, Seubert requested White and Ambassador to send the Faraday $13 million dollar policy for review and transmittal to AE PAPER and its lenders.

27.     On March 13, 2020, Ambassador responded that "Team Ten (AE PAPER) can be assured that they have coverage," but did not send the policy after numerous of requests and calls by Seubert ensured.

28.     On March 24, 2020, White sent an email to Seubert with wiring instructions for AE PAPER to send $948,690.00 to EC3 Insurance Brokers in London, and stated that additional information would follow concerning the capitalization of the AE PAPER Captive. On April 8, AE PAPER signed a Finance Agreement with First Insurance Funding.  A true and correct copy of that Agreement is attached and marked **Exhibit G**.   The $948,690.00 was wired to EC3 Insurance Brokers in London.

29.     Over the next several days and weeks, Seubert repeatedly asked Ambassador to send the actual insurance policy. On April 30, 2020, Ambassador sent an

email and attached an unsigned policy purportedly issued by Lloyds of London. A true and correct copy of this email and policy are attached hereto and marked as **Exhibit H**.

30.     AE PAPER, its lender(s) and Seubert relied upon the representations of White and Ambassador and, proceeded as if insurance had been placed for AE PAPER through AE PAPER's Insurance Captive, and on March 1st, AE PAPER authorized Seubert to effect the cancellation of the Factory Mutual property insurance policy effective from March 3, 2020 thru October 4, 2020 believing the Captive was in effect.

31.     On May 12, 2020, Seubert asked White and Ambassador for the "paperwork" for the formation of the AE PAPER Insurance Captive.  A true and correct copy of the email is attached hereto as **Exhibit I**.  The paperwork was not sent.

32.     In mid May of 2020, Seubert learned that a complaint had been filed in the U.S. District Court, Western District of Kentucky by Lexington Insurance Company against Ambassador, Brandon White, and others.   The lawsuit was captioned <u>as Lexington Insurance Company v. the Ambassador Group LLC d/b/a Ambassador Captive Solutions; Gagliardi Insurance Services, Inc.; Goldenstar Specialty Insurance, LLC; Performance Insurance Company SPC on behalf of Goldenstar Holdings Company SP and on behalf of Smart Insure SP; and Brandon White</u>.  The lawsuit was field on May 11, 2020, and was docketed in the United States District Court for the Western District of Kentucky, Louisville Western Division at Case No. 3:20-cv-330-JRW.

33.     The gist of the complaint filed by Lexington was that White and Ambassador had written counterfeit insurance policies that purported to bind Lexington Insurance to cover risks for a number of businesses.

34.     After learning of the allegations made by Lexington Insurance Company, Ambassador and White, Seubert questioned White about the allegations in the lawsuit, but

were assured by White that the suit was without merit, and resulted from some misunderstanding and would be resolved quickly, however, in August of 2020, Seubert undertook an investigation into Ambassador's and White's dealings with other Seubert clients with whom Ambassador had contracted, including AE PAPER.

35.    Seubert discovered, among other things, that the binders and insurance policy sent by Ambassador to AE PAPER had been prepared and/or altered to show that AE PAPER had $13 million dollars in coverage when only $6.5 Million of coverage was in place with a $1 million dollar deductible.   Both the binder and insurance policy were fraudulent.

36.    After becoming aware of the Lexington Lawsuit, Seubert directly contacted EC3 Insurance Brokers of London to confirm whether AE PAPER  had in fact purchased $13 million dollars in insurance coverage.  Seubert then learned that AE PAPER only had coverage of $6.5 million dollars and that of the $948,690.00, exactly $600,000.00 was charged by underwriters to secure only 50% of the insurance AE PAPER and Seubert was advised has been placed into effect on March 3 2020, leaving only $348,690.00 for a Loss Fund and not the $523,000.00 expected by Seubert and AE PAPER.

37.    This was contrary to Ambassador and White's representations that they had secured $13 million dollars in coverage for a premium payment of $425,690.00, with the loss fund balance required of $523,000.00..

38.    Seubert also learned that Ambassador had never formed the Cayman Islands Insurance Captive for AE PAPER despite having been paid $50,000.00 to do so.

39.    Upon learning of this situation,  Seubert immediately advised Devorris, and worked diligently to fill the coverage gap of $6.5 million dollars coverage deficiency created solely by Defendants.  Effective September 22, 2020 Seubert placed the needed additional

$6.5 million dollars of coverage by wiring $266,200.00 to EC3 Insurance Brokers in London based insurance brokerage on behalf of AE PAPER.  The $266,200.00 was the pro-rata portion of the $600,000 annual premium for $6.5 million dollars in coverage to secure additional coverage from September 22, 2020 through March 3, 2021.

40.    Ambassador and White falsely represented that they had secured coverage of $13 million dollars for AE PAPER from Kiln/Fidelis/Faraday Insurance and purported to confirm it by sending a binding commitment effective March 3, 2020 (**Exhibit F**).  The Faraday binder was false and fraudulent.

41.    Ambassador and White fraudulently misrepresented to AE PAPER and Seubert that it had formed a Cayman Island Insurance captive for AE PAPER to secure insurance coverage of $13 million dollars with $425,690.00 in premium and $523,000.00 in a loss fund.

42.    Ambassador and White falsely and fraudulently represented to AE PAPER and Seubert that an insurance policy providing $13 million dollars in insurance coverage for AE PAPER was in place.

43.    When Seubert discovered the false and fraudulent misrepresentations made by White and Ambassador, Seubert contacted Defendant, White and asked for an explanation.  Defendant, White agreed to pay $300,000.00 to the Plaintiffs to compensate them for the monetary loss due to the Defendants' misrepresentations and failure to form the captive, implement the insurance plan and obtain the insurance in the coverage amounts and for the premiums quoted to Plaintiffs by Defendants.

44.    Despite this promise and Plaintiff's acceptance of this offer and Plaintiffs repeated attempts to obtain payment and Defendants continued promise to pay, Defendant failed to pay any amount to the Plaintiffs.

**COUNT I**
**Breach of Contract**
**American Eagle Papermills v**
**The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon**
**White**

45.     Paragraphs 1-44 are incorporated herein by reference.

46.     Plaintiff entered into a contract with Ambassador based upon the false and fraudulent representations of White, that White and Ambassador would form and manage an off-shore insurance captive for AE PAPER.  AE PAPER paid Ambassador $50,000.00 for this service.

47.     Ambassador failed to form the insurance captive or perform the services as required by the contract.

48.     Ambassador and White breached the contract attached as **Exhibit A**.

WHEREFORE, AE PAPER demands an award against Defendant in excess of $75,000.00 plus interest, costs and attorneys fees.

**COUNT II**
**Breach of Contract**
**American Eagle Papermills v.**
**The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon**
**White**

49.     Paragraphs 1-48 are incorporated herein by reference.

50.     White and Ambassador represented to AE PAPER that they would procure $13 million dollars in property insurance for AE PAPER through an off-shore insurance captive.

51.     On behalf of Ambassador, White agreed with AE PAPER that for $948,690.00 Ambassador would procure $13 million dollars in insurance coverage with a premium cost of $425,690.00, and $523,000.00 would be returned to AE PAPER to be placed in a loss fund.

9

52.     Ambassador breached that agreement by failing to procure $13 million in insurance coverage.

53.     As a result of Ambassador's breach of contract, AE PAPER had to pay $600,000.00 for $6.5 million dollars in insurance coverage, and Seubert paid $266,200.00 for an additional $6.5 million dollars in coverage, on behalf of AE PAPER.

54.     AE PAPER suffered damages in the amount of $349,310.00. The damages consisted of (a) the difference between $600,000.00 paid and the $425,690.00 quoted for the insurance coverage and (b) the difference between $523,000.00 that was to be returned to AE PAPER and the sum of $348,000.00 that was returned along with a significant loss in attorney fees, lost time and a reduction in its credit line.

WHEREFORE, AE PAPER demands an award in its favor in an amount in excess of $75,000.00 plus interest, costs and attorneys fees.

**COUNT III**
**Breach of Contract**
**Seubert & Associates, Inc. v.**
**The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon White**

55.     Paragraphs 1-54 are incorporated herein by reference.

56.     White and Ambassador represented to AE PAPER that they would procure $13 million dollars in property insurance for AE PAPER through an off-shore insurance captive.

57.     On behalf of Ambassador, White agreed with AE PAPER that for $948,690.00 Ambassador would procure $13 million dollars in insurance coverage with a premium cost of $425,690.00, and $523,000.00 would be returned to AE PAPER to be placed in a loss fund.

10

58.     Ambassador breached that agreement by failing to procure $13 million in insurance coverage.

59.     As a result of Ambassador's breach of contract, AE PAPER had to pay $600,000.00 for $6.5 million dollars in insurance coverage, and Seubert, as agent of AE PAPER, paid $266,200.00 for an additional $6.5 million dollars in coverage, on behalf of AE PAPER.

60.     Seubert suffered damages of $266,200.00 that it paid for an additional $600,000.00 in insurance coverage that it procured for AE PAPER and other compensable damages.

61.     White and Ambassador agreed to pay Seubert, $300,000.00 to cover Seubert's losses but failed to do so.

WHEREFORE, Seubert demands an award in its favor in an amount in excess of $75,000.00 plus interest, costs and attorneys fees.

### COUNT IV
### Fraud and Fraud in the Inducement
### American Eagle Papermills and Seubert & Associates, Inc. v.
### The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon
### White

62.     Paragraphs 1-61 are incorporated herein by reference.

63.     Defendants fraudulently induced AE PAPER to enter the contract to form, manage and obtain insurance for AE PAPER's offshore captive, knowingly making misrepresentations of material fact as noted herein.  Furthermore, Defendants continued to knowingly and falsely misrepresent their actions and failures to act, all to the detriment of Plaintiffs, who had relied and continued to rely on Defendants' misrepresentations. At the time of making the representations, White and Ambassador knew or should have known

that the representations were false, and that AE PAPER would not have entered into the agreement or continued to do business with Defendants, had AE PAPER known that the representations were false.

64.     AE PAPER justifiably relied on the Defendants' representations and conduct. But for the falsity of the representations, Plaintiff would not have agreed to engage White and Ambassador or continued to do business with them.  As a result of their justifiable reliance on Defendants' representations relating to the material terms of the agreement and the performance of the Defendants, Plaintiff has been damaged as set forth herein, and said damages directly result from the acts and omissions of Defendants and their agents and representatives.

65.     The allegations set forth herein constitute the tortious claims of Fraud and Fraud in the Inducement in that Defendants' representations were false and made for the purpose of inducing Plaintiff to enter into the contract with Defendants, to pay $50,000.00 to Defendants and $948,690.00 to EC3 for $13 million dollars in insurance coverage and to continue to do business with the Defendants.

66.     Defendants and their agents knew the representations were false, that the representations were material, that Plaintiffs was ignorant of the truth and falsity of the representations, and but for the representations, Plaintiffs would not have engaged Defendants and continued to do business with them.

67.     At all times Plaintiffs did not know, nor could Plaintiffs have discovered, the falsity of the representations, and Plaintiff justifiably relied on, what Plaintiffs believed was the truth of the aforesaid representation and the actions of Defendants and their agents.

WHEREFORE, AE PAPER and Seubert demand an award in their favor in an amount in excess of $75,000.00 plus interest, costs and attorneys fees.

**COUNT V**
**Fraud and Fraud in the Inducement**
**American Eagle Papermills and Seubert & Associates, Inc. v.**
**The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon**
**White**

68.     Paragraphs 1-67 are incorporated herein by reference.

68.     Defendants, through their agent and representatives, has unlawfully converted Plaintiffs' funds for purposes outside the agreement and intent of the parties.

69.     Defendants acted willfully, maliciously in disregard of the rights of AE PAPER and Seubert.

70.     As a direct result Plaintiffs has suffered financial damages.  Furthermore, conduct is so egregious that punitive damages are appropriate and should be awarded in such sums as jury deems just and reasonable.

WHEREFORE, AE PAPER and Seubert demand an award in their favor in an amount in excess of $75,000.00 plus interest, costs and attorneys fees.

**COUNT VI**
**Conversion**
**American Eagle Papermills v.**
**The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon**
**White**

71.     Paragraphs 1 through 70 are incorporated by reference as if fully restated.

72.     By the conduct alleged herein, Defendants have converted Plaintiffs' property, particularly the Plaintiffs' $50,000.00 to their own use and benefit without the authority to do so.

73.     Defendants' conversion of Plaintiffs' property has been knowing, intentional, wanton, willful and an outrageous violation of Plaintiffs' rights.

74.     As a proximate result of Defendants' conversion of Plaintiffs' property, Plaintiffs have suffered substantial damages.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment against Defendants for Conversion in an amount in an amount to be determined, which amount is in excess of the jurisdictional amount for compulsory arbitration, as follows:

    a. For compensatory and punitive damages

    b. For attorney's fees and costs; and

    c. For such other and further relief as this Court may deem equitable and just.

### COUNT VII
### Punitive Damages
### American Eagle Papermills and Seubert & Associates, Inc. v.
### The Ambassador Group, LLC, d/b/a Ambassador Captive Solutions and Brandon White

  75.     Paragraphs 1 through 74 are incorporated by reference as if fully restated.

  76.     The actions of the Defendants were willful, wanton, and carried out in a gross manner which was in total disregard for the financial well-being of Plaintiffs.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter an award of punitive damages to compensate Plaintiffs for the outrageous and injurious conduct of the Defendants.

Respectfully submitted,

Date:  September 30, 2021     **/s/ W. David Slomski**
                        PA Attorney No.:  32255
                        Law Offices of W. David Slomski, Esquire, RPLLC
                        210 Federal Street, Suite 200
                        Pittsburgh, PA 15212
                        (412)391-8443x105
                        dslomski@slomskilawpa.com
                        Counsel for Plaintiffs

**VERIFICATION**

I, Brandon Mueller, President of Seubert & Associates, Inc., the undersigned, state under the penalties provided by 18 Pa. C.S.A. Section 4904 (unsworn falsification to authorities) that the statements and averments of fact contained in the foregoing Plaintiffs' First Amended Complaint in Civil Action are true and correct to the best of my knowledge, information and belief.

Seubert & Associates, Inc.

Date:  September 30, 2021          By:  **/s/ Brandon Mueller**
                                        Brandon Mueller, President

1

**VERIFICATION**

I, Philip Devorris, President of Team Ten, LLC d/b/a American Eagle Papermills, Inc.,  the undersigned, state under the penalties provided by 18 Pa. C.S.A. Section 4904 (unsworn falsification to authorities) that the statements and averments of fact contained in the foregoing Plaintiffs' First Amended Complaint in Civil Action are true and correct to the best of my knowledge, information and belief.

President of Team Ten, LLC d/b/a
American Eagle Papermills, Inc.

Date:  September 30, 2021          By:  **/s/ Philip Devorris**
                                        Philip Devorris, President

2

## **CERTIFICATE OF SERVICE**

**I hereby certify that a true and correct copy of the foregoing** Plaintiffs' First Amended Complaint was served upon the following counsel by email, this 30th  day of September, 2021 as follows:


**Brad S. Keeton**
**brad.keeton@skofirm.com**
**Culver V. Halliday**
**culver.halliday@skofirm.com**
**Kevin A. Imhof**
**kevin.imhof@skofirm.com**
**Stoll Keenon Ogden, PLLC**
**500 West Jefferson Street**
**Suite 2000**
**Louisville, KY 40202**
**Attorneys for Defendants, The Ambassador Group, LLC and Brandon M. White**


**/s/ W. David Slomski**
W. David Slomski, Esquire
Attorney for Plaintiffs, Seubert & Associates, Inc. and
Team Ten, LLC d/b/a American Eagle Papermill

4